UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES DAVIS | CIVIL ACTION |
| VERSUS | NO. 10-4353 |
| MARLIN GUSMAN, ET AL. | SECTION "I" (1) |

### ORDER AND REASONS

Plaintiff, James Davis, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman and Deputy Errol Broussard. In the complaint, plaintiff states his claim as follows:

> On 9/5/2010 while housed at Conchetta Detention Facility I was assaulted and battered by two inmates sustaining a severely broken jaw requiring surgery and wiring.
> I am a pretrial detainee and as such do not shed my constitutional rights at the prison gate.
> This injury was sustained because Deputy Broussard deserted his post after witnessing an escalating argument between inmates.[1]

---

[1] Rec. Doc. 1, p. 5. Despite this assertion by plaintiff that he was a pretrial detainee, he indicated in another section of the complaint that he was in fact convicted on August 24, 2009. However, the Court need not resolve that discrepancy, in that plaintiff's claims fail regardless of whether he was a pretrial detainee or a convicted prisoner.

The defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[2] Plaintiff has opposed that motion.[3] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[4]

### I.  Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir.

---

[2]  Rec. Doc. 15.

[3]  Rec. Doc. 17.

[4]  Rec. Doc. 12.

2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II. Plaintiff's Claims

### A. Orleans Parish Sheriff Marlin Gusman

Plaintiff has named Orleans Parish Sheriff Marlin Gusman as a defendant in this lawsuit. Plaintiff does not indicate whether Gusman is being sued in his official capacity, his individual capacity, or both. However, regardless of plaintiff's intent, no claim has been properly stated against Gusman in any capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Gusman would in reality be a claim against the local governmental body itself. Glasper v. Guzman, Civ. Action No. 06-2040, 2009 WL 1507568, at *6 (E.D. La. May 27, 2009); Stewart v. Criminal District Court of Louisiana, Civ. Action No. 08-3731, 2008 WL 4758610, at *3 (E.D. La. Oct. 30, 2008). The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially

> allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Therefore, no official-capacity claim has been properly stated against Gusman.

Plaintiff has likewise failed to state a proper individual-capacity claim against Gusman. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff neither makes any factual allegations against Gusman nor claims that he was in any way personally involved in this incident. Further, Gusman may not be held liable pursuant

4

to § 1983 under any theory of strict liability[5] or vicarious liability[6] for federal civil rights violations allegedly committed by his subordinates.

### B. Deputy Errol Broussard

The remaining defendant is Deputy Errol Broussard. As noted, it is claimed that Broussard failed to protect plaintiff from violence at the hands of other inmates. It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). That said, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).

Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time

---

[5] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[6] Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998).

In the instant case, plaintiff does not allege that Broussard overheard plaintiff being threatened in the argument, nor does plaintiff allege that there was a history of threats or violence between him and the inmates who assaulted him. Further, he does not allege that he requested Broussard's protection or intervention in the argument,[7] nor does he offer any support for his implicit contention that Broussard had reason to suspect that the argument would escalate into a violent confrontation. Lastly, there is no allegation that even plaintiff himself, much less Broussard, had advance warning of this alleged assault.[8] Because there is no evidence whatsoever showing that Broussard had reason to know that plaintiff's safety was endangered, his claim must fail. See, e.g., Taylor v. Welch, No. 1:07-CV-588, 2007 WL 3302099 (W.D. Mich. Nov. 6, 2007) (absent threats of physical harm or a request for protection, guards' mere witnessing of an inmate argument was insufficient to support a failure-to-protect claim); Lucas v. Eagleton, No. 0:05-2007, 2007 WL 2457571 (D.S.C. Aug. 23, 2007). Simply put, Broussard cannot be said to have been deliberately indifferent in failing to protect against a potential harm of which he was unaware. Farmer v. Brennan, 511 U.S. 825, 844 (1994); Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *6 (E.D. La. Oct. 23, 2009).

---

[7] On the contrary, while it is not determinative of plaintiff's claim by any means, the Court notes that the uncontroverted record indicates that plaintiff was the aggressor in the fight and threw the first punch. Rec. Doc. 15-5, pp. 2-3.

[8] Broussard, on the other hand, has provided a sworn affidavit stating that "[a]t no time was he informed or warned Davis would be injured or struck by any other inmate." Rec. Doc. 15-5, p. 2.

The Court further notes that plaintiff's claim is seemingly based on a premise that a prison guard violates an inmate's constitutional rights by failing to intervene or provide continual supervision whenever he sees an argument between inmates. That contention is neither supported by controlling law nor even minimally practical considering realties of prison administration and the pervasiveness of inmate disputes over matters both large and small.[9]  In light of those realities, courts have noted that it is impossible to expect that prison officials can make jails havens of absolute safety. For example, one court opined:

> [I]t is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons.

Campbell v. Anderson, 335 F.Supp. 483, 486 (D. Del. 1971); see also Farmer, 511 U.S. at 858-89 (Thomas, J., concurring) (noting that "[p]risons are necessarily-dangerous places" which "house society's most antisocial and violent people in close proximity with one another" and that "some level of brutality ... among prisoners is inevitable no matter what the guards do unless all prisoners are locked in their cells 24 hours a day and sedated") (quotation marks, brackets, and ellipsis omitted). Indeed,

> [t]his is often the predicament confronting prison officials who must serve as referees, as well as custodians, over incarcerated individuals who are not known for their civility or their ability to negotiate amicably or reasonably with other individuals. *Every day prison officials must make decisions as to whether a dispute between two prisoners is a genuine threat to their safety or merely a routine dispute that will soon be forgotten. Sometimes, an official makes an incorrect assessment*

---

[9] The argument here, for example, was a simple dispute over food. Rec. Doc. 15-5, pp. 1 and 3.

> *regarding the seriousness of the situation and someone gets hurt; however, the official is entitled to qualified immunity and cannot be held liable if he made a good faith error.*

McKnight v. Livingston, Civ. Action No. H-06-3674, 2007 WL 221926, at *2 (S.D. Tex. Jan. 25, 2007) (emphasis added; citations omitted).

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this seventh day of July, 2011.

 _____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**